UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| DONALD L. SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>RONALD THURMAN,<br><br>    Defendant. | Case No. 2:24-cv-00004<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 arises out of proceedings in the Chancery Court for Cumberland County, Tennessee. (Doc. No. 11); *see also Thomas v. Smith*, 682 S.W.3d 213, 217–18 (Tenn. Ct. App. 2023). Pro se Plaintiff Donald L. Smith alleges that Defendant Chancellor Ronald Thurman violated Smith's constitutional rights by granting Smith's ex-wife sole possession of the residential property where Smith lived, ordering Smith to vacate the property within ten days, and issuing a writ of possession that led to Smith's forcible removal and eviction from the property. (Doc. No. 11.) Thurman has filed a motion to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim on which relief can be granted. (Doc. No. 13.) Smith has responded in opposition to Thurman's motion to dismiss. (Doc. No. 15.) Thurman did not file an optional reply.

For the reasons that follow, the Magistrate Judge will recommend that the Court grant Thurman's motion to dismiss.

**I.     Background**

**A.     Factual Background**

On May 13, 2022, Thurman held a bench trial in Cumberland County Chancery Court on a petition to quiet title of the residential property in Crossville, Tennessee, where Smith had resided for eleven years. (Doc. No. 11); *Thomas*, 682 S.W.3d at 217–18. The petition also sought to remove Smith from the property. (Doc. No. 11); *Thomas*, 682 S.W.3d at 217–18. "At the conclusion of that hearing, Chancellor Thurman announced he would be entering an Order in favor of the Petitioner, one N[i]kita Thomas." (Doc. No. 11, PageID# 99.)

Thurman entered an order on May 27, 2022, finding "[t]hat title of the property . . . [was] fully vested in the Petitioner, Nikita Thomas" and granting Thomas's petition. (Doc. No. 11-1, PageID# 111, ¶ 2); *see also Thomas*, 682 S.W.3d at 219. Thurman's order granted Thomas "sole possession of the property" and provided that Smith "shall have ten (10) days from the entry of this Order to move from the property. A Writ of Possession for the property shall issue if [Smith] fails to move from the property within 10 days of the entry of this order." (Doc. No. 11-1, PageID# 112, ¶ 4); *see also Thomas*, 682 S.W.3d at 219.

Smith did not move from the property, and the chancery court clerk's office issued a writ of possession on June 7, 2022. (Doc. No. 11-1); *see also Thomas*, 682 S.W.3d at 219. Smith alleges that "Cumberland County Sheriff's Deputies, acting pursuant to the Writ of Possession . . . [,]" "forcibly evicted [Smith], together with all of his 11-years of accumulated property" on June 8, 2022. (Doc. No. 11, PageID# 102 n.2); *see also Thomas*, 682 S.W.3d at 219 (noting that, "on June 7, 2022, the trial court issued a Writ of Possession to remove Mr. Smith from the property, which was executed on June 8, 2022"). Thomas "took immediate possession" of the property after Smith was "evicted and removed[.]" (Doc. No. 11, PageID# 102 n.2.)

On June 9, 2022, Thurman held a hearing regarding compensation for damage to the property. (Doc. Nos. 11, 11-1); *Thomas*, 682 S.W.3d at 219. "In an order entered on June 23, 2022, the trial court directed Mr. Smith to pay Ms. Thomas $8,000 in compensatory damages and $1,000 in attorney's fees." *Thomas*, 682 S.W.3d at 221.

Smith "filed a notice of appeal on July 18, 2022." *Id.* Smith's appeal did not challenge the provision of Thurman's order that required Smith to vacate the property within ten days but did challenge Thurman's determination that Thomas held the property's title and his award of compensatory damages and attorney fees. *See id.* at 221–22 (listing issues presented on appeal). On July 28, 2023, the court of appeals "vacate[d] the trial court's award to Ms. Thomas of $1,000 in attorney's fees" but "affirm[ed] the trial court's judgment in all other respects, including the vesting of title to the Property in Ms. Thomas and the award of $8,000 in compensatory damages." *Id.* at 233. The court of appeals remanded the case "for the trial court to (1) make a new determination of reasonable attorney's fees to be awarded to Ms. Thomas . . . , (2) enforce the trial court's judgment, and (3) collect costs below." *Id.* The Tennessee Supreme Court denied Smith's application for permission to appeal on November 17, 2023. (Doc. No. 11-1); *Thomas*, 682 S.W.3d 213.

On April 22, 2024, Thurman held an evidentiary hearing regarding attorney's fees on remand. *See* 4-22-24 Order, *Thomas v. Smith*, No. 2021-CH-2011 (Tenn. Ch. Ct. June 21, 2024).[1] On June 21, 2024, Thurman entered an order awarding Thomas $6,410.00 in attorney's fees. *Id.*

---

[1] The Court may consider "documents from other court proceedings" in resolving a motion to dismiss. *Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425–26 (6th Cir. 2018).

B.  **Procedural History**

Smith initiated this action on January 30, 2024, by paying this Court's civil filing fee (Doc. No. 1-3) and filing a complaint against Thurman using the Court's template pleading for civil rights claims asserted under 42 U.S.C. § 1983 (Doc. No. 1). On the same day, at Smith's request, the Clerk of Court issued a summons to Thurman. (Doc. No. 4.) Smith returned the executed summons (Doc. No. 5), and, on February 28, 2024, Thurman appeared (Doc. No. 6) and moved to dismiss Smith's complaint under Rules 12(b)(2) and 12(b)(6) (Doc. No. 7).

On March 18, 2024, Smith filed an amended complaint against Thurman. (Doc. No. 11.) The Court found that Smith "ha[d] filed an amended complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B)" and therefore terminated Thurman's motion to dismiss the original complaint without prejudice "to refiling as appropriate to address the amended complaint." (Doc. No. 12.)

Smith's amended complaint also uses the Court's template pleading for claims asserted under § 1983. (Doc. No. 11.) Smith's amended complaint names Thurman as the sole defendant, and Smith checked a box indicating that he is suing Thurman in his "[o]fficial capacity[.]" (*Id.* at PageID# 96.) Smith alleges generally that Thurman violated Smith's "rights secured under the 4th, 5th, 9th, and 14th Amendments to the Constitution of the United States[.]" (*Id.* at PageID# 97.) Smith specifically alleges that Thurman's order requiring Smith to vacate the property within ten days violated Tennessee Rule of Civil Procedure 62.01. (Doc. No. 11.) Tennessee Rule 62.01 provides that, "[e]xcept as otherwise provided in this Rule, no execution shall issue upon a judgment, nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry." Tenn. R. Civ. P. 62.01. The amended complaint seeks compensatory and punitive damages totaling $76,000.00 and asks this Court to "enjoin[ ] the Chancery Court/Chancellor Thurman from conducti[]ng the hearing or awarding attorney fees to [Thomas's] attorney for

obtaining the unlawful writ of possession that wrongfully resulted in [Smith's] unlawful eviction." (Doc. No. 11, PageID# 104.)

Thurman filed a motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, alternatively, under Rule 12(b)(6) for failure to state a claim on which relief can be granted. (Doc. No. 13.) Thurman argues that the Eleventh Amendment bars this Court from considering Smith's official-capacity claims against him. (Doc. No. 14) Thurman argues that, to the extent that the amended complaint can be construed to assert individual-capacity claims against him, absolute judicial immunity bars such claims and, in the alternative, that any individual-capacity claims are untimely. (*Id.*) Smith filed a response in opposition to Thurman's motion to dismiss the amended complaint. (Doc. No. 15.) Thurman did not file an optional reply.

The Court has referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 10.)

## II. Analysis

### A. Thurman's Eleventh Amendment Immunity Arguments

Thurman argues that Smith's claims against him are "barred by the Eleventh Amendment" because Smith "sued [ ] Thurman in his official capacity only and seeks monetary damages." (Doc. No. 14, PageID# 120–21.) The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. "Although by its terms the Amendment applies only to suits against a state by citizens of another state, the Supreme Court has extended it to suits by citizens against their own states." *Babcock v. Michigan*, 812 F.3d 531, 533 (6th Cir. 2016) (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). "The immunity also applies

5

Case 2:24-cv-00004   Document 16   Filed 01/27/25   Page 5 of 14 PageID #: 133

to actions against state officials sued in their official capacity for money damages." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (quoting *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)). However, Eleventh Amendment "immunity applies only to lawsuits against the State or 'an arm of the State,' not to those against political subdivisions like counties." *Laborers' International Union, Local 860 v. Neff*, 29 F.4th 325, 330 (6th Cir. 2022) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)); *see also Ernst*, 427 F.3d at 358.

Thurman raises his Eleventh Amendment immunity argument under Rule 12(b)(2), which addresses dismissal for lack of personal jurisdiction. (Doc. No. 14.) But "[d]ismissals under Eleventh Amendment immunity . . . come under Rule 12(b)(1), which covers dismissals for 'lack of subject-matter jurisdiction.'" *Crump v. Blue*, 121 F.4th 1108, 1113 (6th Cir. 2024) (quoting Fed. R. Civ. P. 12(b)(1)). Although Thurman does not invoke it, a recent line of cases departs from traditional sovereign immunity analysis to distinguish between Eleventh Amendment immunity and common-law sovereign immunity, finding that, while the doctrines are "often treated . . . as interchangeable concepts[,] . . . as a matter of original meaning, the two are conceptually distinct." *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513 (6th Cir. 2021); *but see id.* (citing *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002), and *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 650 (6th Cir. 2013), as examples of cases that treat Eleventh Amendment immunity and sovereign immunity interchangeably). These cases direct that "[t]he plain text of the [Eleventh Amendment] includes a diversity requirement and sounds in subject-matter jurisdiction[,]" while state sovereign immunity "refers to a state's right 'not to be amenable to the suit of an individual without its consent' . . . [,] sounds in personal jurisdiction[,] and may be waived by a state's conduct." *Id.* at 513–14 (quoting The Federalist No. 81, at 486 (Alexander Hamilton) (Clinton

Rossiter ed., 1961)). Under this reasoning, an Eleventh Amendment immunity defense is properly raised under Rule 12(b)(1) and a sovereign immunity defense is raised under Rule 12(b)(2).

There is no diversity of citizenship between Smith and Thurman; thus, under *WCI*'s reasoning, the Eleventh Amendment "cannot be applicable" and Smith's "immunity argument is rooted in state sovereign immunity . . . [and] 'sounds in personal jurisdiction.'" *Amacher v. Tennessee*, No. 3:21-CV-00638, 2022 WL 141607, at *2 (M.D. Tenn. Jan. 14, 2022) (quoting *WCI*, 18 F.4th at 514). By raising an Eleventh Amendment defense under Rule 12(b)(2), Thurman seemingly plants one foot in each line of analysis. Regardless, as this Court and the Sixth Circuit have repeatedly found, such confusion "in no way obscures the true basis to the challenge to jurisdiction" Thurman raises—that Tennessee's sovereign immunity applies to bar Smith's claims against him. *Thomas v. Tenn. Dep't of Hum. Servs.*, No. 3:21-cv-00426, 2022 WL 2286780, at *3 n.5 (M.D. Tenn. June 23, 2022) (recognizing that, "[i]n *WCI, Inc.*, the Sixth Circuit seemed content to address the clear substance of the defendant's immunity argument, even though it was likewise mischaracterized" (citing 18 F.4th at 512–13)).

Thurman argues that he is entitled to sovereign immunity from Smith's official-capacity claims because "Thurman is a state employee." (Doc. No. 14, PageID# 120 (citing Tenn. Code Ann. §§ 8-42-101(3)(a), 8-7-201, and 8-7-226).) "[F]or the purpose of sovereign immunity[,] 'individuals sued in their official capacities stand in the shoes of the entity they represent.'" *S.J. v. Hamilton Cnty.*, 374 F.3d 416, 420 (6th Cir. 2004) (quoting *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)). Tennessee chancery courts are arms of the state for purposes of sovereign immunity. *See Doe v. Tennessee*, Case No. 3:18-cv-00471, 2022 WL 3365062, at *5–7 (M.D. Tenn. Aug. 15, 2022), *report and recommendation adopted*, 2023 WL 2699970 (M.D. Tenn. Mar.

29, 2023). Thus, as a chancery court judge sued in his official capacity, Thurman's immunity to Smith's claims is coextensive with Tennessee's.

Courts have long found that sovereign immunity does not bar claims against a state "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908) applies."[2] *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). None of these exceptions applies to Smith's official-capacity claims against Thurman.

First, the Tennessee Constitution provides that Tennessee has sovereign immunity from claims brought against it unless the State Legislature expressly waives that immunity. Tenn. Const. art. 1, § 17. The State Legislature codified this provision in Tenn. Code Ann. § 20-13-102, which bars suits against the State of Tennessee in state and federal courts unless the State Legislature has expressly waived that immunity. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (citing Tenn. Code Ann. § 20-13-102(a)); *Woolsey v. Hunt*, 932 F.2d 555, 565 (6th Cir. 1991) (quoting Tenn. Code Ann. § 20-13-102(a)). Tennessee has not waived its immunity to claims brought under § 1983. *See Berndt*, 796 F.2d at 881. The first exception therefore does not apply.

Second, "[s]ection 5 of the Fourteenth Amendment . . . grant[s] Congress the authority to abrogate the States' sovereign immunity." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000). A federal statute may abrogate the states' sovereign immunity if "Congress unequivocally expressed its intent to abrogate that immunity" while "act[ing] pursuant to a valid grant of constitutional

---

[2] The Sixth Circuit found in *WCI* that the Eleventh Amendment's "unequivocal language 'admits no waivers, abrogations, or exceptions ("to *any suit* in law or equity")[.]'" *WCI, Inc.*, 18 F.4th at 513–14 (quoting *PennEast Pipeline Co. v. New Jersey*, 594 U.S. 482, 511 (2021) (Gorsuch, J., dissenting)). Because the Sixth Circuit has traditionally addressed these exceptions in an Eleventh Amendment analysis, and because they are applicable to common-law sovereign immunity, the Court considers them here.

authority." *Id.* at 73. The Supreme Court has held that Congress did not abrogate states' immunity to suits brought under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–67 (1989); *see also Boler*, 865 F.3d at 410. The second exception therefore does not apply.

Third, the *Ex parte Young* exception allows suits for prospective injunctive relief against state officials acting in violation of federal law. *See Boler*, 865 F.3d at 412 (quoting *S & M Brands, Inc.*, 527 F.3d at 507). Smith's amended complaint asks the court for "injunctive relief" in the form of "enjoining the Chancery Court/Chancellor Thurman from conducti[]ng the hearing or awarding attorney fees to [Thomas's] attorney . . . ." (Doc. No. 11, PageID# 104.) But publicly available court records show that Thurman already held an evidentiary hearing regarding attorney's fees on remand and awarded Thomas approximately $6,000.00 in attorney's fees. *See* 4-22-24 Order, *Thomas v. Smith*, No. 2021-CH-2011 (Tenn. Ch. Ct. June 21, 2024). Smith's request for injunctive relief is therefore moot. "The *Ex parte Young* exception does not . . . extend to any retroactive relief." *S & M Brands, Inc.*, 527 F.3d at 508; *see also Papasan v. Allain*, 478 U.S. 265, 278 (1986) (holding that retroactive relief, "even though styled as something else[,]" is barred by sovereign immunity). The third exception does not apply, and sovereign immunity bars Smith's official-capacity claims against Thurman.

Smith argues that "[t]he Eleventh Amendment does not bar all claims against a state court Chancellor such as Chancellor Thurman . . . when the Chancellor exceeds his jurisdictional authority to the detriment of a litigant." (Doc. No. 15, PageID# 126.) But the only authority Smith cites in support of this argument is *Stump v. Sparkman*, 435 U.S. 349 (1978), which addresses the common-law doctrine of absolute judicial immunity. *Stump* is therefore not applicable to Thurman's sovereign immunity arguments. The Court addresses Thurman's judicial immunity defense below.

The Court should grant Thurman's motion to dismiss Smith's official-capacity claims against him.

### B. Thurman's Remaining Dismissal Arguments

Thurman argues that, "[t]o the extent the Amended Complaint could be construed as a suit against [him] in his individual capacity," dismissal is warranted under Rule 12(b)(6) because Thurman is entitled to absolute judicial immunity and, in the alternative, because Smith's individual-capacity claims are untimely under the relevant statute of limitations. (Doc. No. 14, PageID# 121.)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Smith appears pro se, the Court construes his filings "'liberally'" and holds his amended complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

"Judicial officers generally are absolutely immune from civil suits for monetary damages under § 1983 for their judicial actions." *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)); *see also Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) ("It is well[ ]established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." (quoting *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004))). The rationale underlying this immunity "is that judicial officers should be free to make controversial decisions and act upon their convictions without fear of personal liability." *Cooper*, 203 F.3d at 944 (citing *Stump*, 435 U.S. at 355–56); *see also Mireles*, 502 U.S. at 10 ("Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" (quoting *Bradley v. Fisher*, 13 Wall. 335, 347 (1872))). "Judicial immunity exists even where a judge acts corruptly or with malice." *Leech*, 689 F.3d at 542 (first citing *Brookings*, 389 F.3d at 617; and then citing *Mireles*, 502 U.S. at 11).

The protective shield of judicial immunity can be pierced in only two circumstances. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. Whether an act is judicial or nonjudicial depends "on 'the nature of the function performed, not the identity of the actor who performed it.'" *Barrett v. Harrington*, 130 F.3d 246, 257 (6th Cir. 1997) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)); *see also Mireles*, 502 U.S. at 13 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. The Sixth Circuit has "interpreted this language to mean that there is sufficient jurisdiction for immunity purposes where a court has *some* subject matter jurisdiction over the underlying legal actions." *Cooper*, 203 F.3d at 946. As the party asserting judicial immunity, Thurman bears the burden of establishing that it exists. *See Leech*, 689 F.3d at 542 (quoting *Brookings*, 389 F.3d at 617); *Barnes*, 105 F.3d at 1115.

Thurman argues that neither exception applies here because "[p]residing over trials, ruling on testimony and evidence, and issuing [o]rders are judicial functions falling within the jurisdiction of Chancellor Thurman's court." (Doc. No. 14, PageID# 124.) Smith argues that Thurman's challenged actions were nonjudicial and "exceed[ed] his jurisdictional authority" because Thurman's "ruling that dictated [Smith] would have to leave or else be removed from his home within ten (10) days . . . was in violation of a Tennessee state law [that] [Thurman] had sworn to uphold/obey[.]" (Doc. No. 15, PageID# 126; *see also id.* ("Who could argue with a straight face that a judge, in clearly violating the laws of his state to the detriment of a party, all while acting under color of law, was performing an act 'normally performed by a judge[?]'").) But, as Thurman points out (Doc. No. 14), judicial immunity may still apply "even if a judge acts erroneously, corruptly, or in excess of his jurisdiction." *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997);

*see also Mireles*, 502 U.S. at 12–13 ("If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'"(alteration in original) (quoting *Stump*, 435 U.S. at 356)); *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985) ("Provided that they do not engage in non-judicial acts or act in the clear absence of all jurisdiction, judges presiding over courts of general jurisdiction are absolutely immune from suits for damages even if they act erroneously, corruptly or in excess of jurisdiction.").

Here, Thurman engaged in the "'paradigmatic judicial act [of] the resolution of a dispute between parties who ha[d] invoked the jurisdiction of the court'" when he ruled on Thomas's petition following a bench trial. *Nashville Cmty. Bail Fund v. Gentry*, 496 F. Supp. 3d 1112, 1132 (M.D. Tenn. 2020) (quoting *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989)); *see also Brookings*, 389 F.3d at 618 ("In examining the functions normally performed by a judge, this court has recognized that 'paradigmatic judicial acts,' or acts that involve resolving disputes between parties who have invoked the jurisdiction of a court, are the touchstone for application of judicial immunity." (quoting *Barrett*, 130 F.3d at 255)). And because the chancery court had "*some* subject matter jurisdiction over the underlying legal action[ ][,]" there is no basis to support a finding that Thurman "'acted in the "clear absence of all jurisdiction."'" *Cooper*, 203 F.3d at 946 (quoting *Stump*, 435 U.S. at 357).

Thus, Thurman has shown that he is entitled to absolute judicial immunity from any individual-capacity claims in Smith's amended complaint.[3] The Court therefore does not need to

---

[3] Judicial immunity shields Thurman from Smith's claims for monetary damages. *See Cooper*, 203 F.3d at 944. To the extent that Smith's amended complaint requests injunctive relief, the Court has already determined that request is moot.

consider Thurman's alternative argument that any individual-capacity claims are also barred by the relevant statute of limitations.

## III. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Thurman's motion to dismiss (Doc. No. 13) be GRANTED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 27th day of January, 2025.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge